IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SOLOMON T. NUNNALLY, JR., )
)
)
Plaintiff, )
)
v. ) 1:11CV460
)
CAROLYN W. COLVIN,[1] )
Commissioner of Social Security, )
)
Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Solomon T. Nunnally, Jr. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on October 11, 2006, alleging a disability onset date of April 18, 2005. (Tr. at 97-98.)[2] His application was denied initially (Tr. at 53, 55-58) and upon reconsideration (Tr. at 54, 67-69). Thereafter, he

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #9].

requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 71.) Plaintiff, along with his attorney, attended the subsequent hearing on February 13, 2009. (Tr. at 13.) The ALJ ultimately determined that Plaintiff was disabled from April 18, 2005 through May 30, 2006, when he experienced medical improvement and no longer qualified as disabled under the Act. (Tr. at 22.) On May 26, 2011, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

In rendering his determination that Plaintiff was not disabled beginning May 31, 2006, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant met the insured status requirements of the Social Security Act as of April 18, 2005, the date the claimant became disabled.
>
> 2. The claimant has not engaged in substantial gainful activity since April 18, 2005, the alleged onset date (20 CFR 404.1520(b) and 20 CFR 404.1571 *et seq.*).
> . . . .
>
> 3. At all times relevant to this decision, the claimant has had the following severe impairment: residuals of a left rotator cuff tear (20 CFR 404.1520(c)).
> . . . .
>
> 13. Beginning on May 31, 2006, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).
>
> 14. After careful consideration of the entire record, the undersigned finds that, beginning on May 31, 2006, the claimant has had the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b), except he is limited to occasional pushing and pulling with the left upper extremity and limited to occasional reaching overhead, handling, and fingering of the left upper extremity.

(Tr. at 16, 20.)

The ALJ determined that the demands of Plaintiff's past relevant work exceeded the above residual functional capacity ("RFC"). However, the ALJ then considered Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines ("the grids") contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, and found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. Accordingly, he concluded that Plaintiff was not under a "disability," as defined in the Act, as of May 31, 2006. (Tr. at 22.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

3

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453
(continued...)

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. He therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from a single severe impairment: residuals of a left rotator cuff tear. (Tr. at 16.) The ALJ found at step three that this impairment did not meet or equal a disability listing. (Tr. at 423.) Accordingly, he assessed Plaintiff's RFC and determined that, after May 31, 2006, Plaintiff retained the ability to perform light work with further restrictions to only occasional pushing, pulling, overhead

---

[4](...continued)
F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

6

reaching, handling, and fingering with his left upper extremity. (Tr. at 20.) Although the ALJ determined at step four that Plaintiff's past relevant work exceeded his RFC, he found at step five that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work." He therefore applied the grids and determined that "a finding of 'not disabled' [was] directed by Medical-Vocational Rule 202.18." (Tr. at 22.)

Plaintiff now argues that the ALJ erred in (1) assessing Plaintiff's credibility, (2) considering the treating physician's opinion of Dr. McGinley, (3) assessing Plaintiff's RFC, and (4) failing to obtain vocational expert testimony. The Court agrees with Plaintiff's final contention that the additional limitations set out in Plaintiff's RFC substantially erode the occupational base of light work and place the step five determination in this case outside the scope of the grids.[6] Without vocational expert testimony, substantial evidence fails to support the ALJ's step five finding, and remand is required. Because Plaintiff's other issues may be addressed further as part of the remand, the Court need not consider the additional issues raised by Plaintiff at this time.

At step five of the sequential analysis, the government must prove in one of two ways that a claimant remains able to perform other jobs available in the community. Where a plaintiff suffers from purely exertional limitations,[7] the ALJ may apply the grids to establish that claimant's vocational ability. See McLain v. Schweiker, 715 F.2d 866, 870 n.1 (4th Cir. 1983).

---

[6] Plaintiff erroneously states that the RFC in question limits him to sedentary, rather than light, work. (See Pl.'s Br. [Doc. #12] at 10-12.) This misstatement has no bearing on the validity of Plaintiff's step five argument.

[7] Exertional limitations "affect only [a claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

7

In other words, if a plaintiff can perform the full range of work within one of the exertional categories defined by 20 C.F.R. § 404.1567, i.e., sedentary, light, medium, heavy, or very heavy, the Fourth Circuit has held that the grids adequately encompass the plaintiff's ability to perform basic work activities. See Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985). If, on the other hand, the claimant suffers from significant nonexertional limitations,[8] the grids are not determinative, and the ALJ must consider vocational expert testimony. McLain, 715 F.2d at 870 n.1. However, not every nonexertional limitation is significant; "certain additional nonexertional limitations may have very little effect on the range of work remaining that an individual can perform, . . . because relatively few jobs in the national economy require these skills" at the given exertional level. Sherby v. Astrue, 767 F. Supp. 2d 592, 597 (D.S.C. 2010).

In the present case, Plaintiff's RFC clearly contains both exertional and nonexertional limitations beyond those of purely "light" work. In terms of exertional limitations, he is limited to only occasional pushing and pulling with his left arm, and his nonexertional limitations include restrictions to only occasional handling, fingering, and overhead reaching with his left hand. (Tr. at 20.) Where, as here, an RFC contains a combination of exertional and nonexertional limitations, Social Security Rulings ("SSRs") 83-14, 85-15, and 83-12 provide guidance in evaluating whether the limitations substantially erode the occupational base in question. For instance, Ruling 85-15 explains that reaching and handling are "required in almost all jobs" and "[s]ignificant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do." Ruling 85-15 further explains that "loss

---

[8] Nonexertional limitations affect a claimant's ability to meet the other demands of job and include mental limitations, pain limitations, and physical limitations not included in the seven strength demands.

of fine manual dexterity [i.e., fingering] narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work." SSR 85-15, 1985 WL 56857, at *7. Ruling 83-14 similarly notes that "many unskilled light jobs . . . require gross use of the hands to grasp, hold, and turn objects," and that "[a]ny limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work." 1983 WL 31254, at *4.

In addition, "SSR 83-12 makes clear that significant loss of the use of an upper extremity is a critical factor [that a vocational expert] must take into account in determining the size of the remaining occupational base." Schwabe v. Barnhart, 338 F. Supp. 2d 941, 954 (E.D. Wis. 2004). This Ruling "discusses not just complete loss of the use of the arm (e.g. paralysis or amputation) but also "partial loss of use of the extremity." Id. at 954 n.7 (citing SSR 83-12, 1983 WL 31253, at *4). "In cases involving a claimant who has loss of use of an upper extremity, Ruling 83-12 acknowledges that a vocational expert should normally be obtained 'to determine the size of the remaining occupational base, cite specific jobs within the individual's [residual functional capacity], and provide a statement of the incidence of those jobs in the region of the individual's residence.'" Alsept v. Sec'y of Health and Human Serv., 815 F.2d 701 (6th Cir. 1987) (Table).

In the present case, the ALJ appears to have recognized that the effects of Plaintiff's additional limitations on his job base required further clarification, despite his assertion that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work." Rather than eliciting vocational expert testimony at that point, however, the ALJ

9

instead cited findings from a Disability Determination Services ("DDS")[9] case development sheet dated March 1, 2007. (Tr. at 22.) This sheet, which is basically a list of DDS actions and findings in Plaintiff's case, identifies three jobs by Dictionary of Occupational Titles ("DOT") number and title which "are unskilled in nature and are appropriate for workers who have total or partial loss of an upper extremity." (Tr. at 291.) The ALJ adopted this finding verbatim, along with the agency's conclusion that Medical-Vocational Rule 202.18 applies and directs a finding of not disabled. (Tr. at 22, 291.) The issue, therefore, is whether the opinion of an unidentified DDS analyst provides an adequate substitute for live vocational expert testimony.

"Social Security Ruling 00–4p clarifies that vocational experts are individuals who provide testimony before ALJs and vocational specialists provide evidence to adjudicators at the state agency disability determination services." Jimenez-Cruz v. Astrue, No. 09-1812 (MEL), 2012 WL 1207387, at *14 n.10 (D. Puerto Rico April 11, 2012) (unpublished); SSR 00-4p, 2000 WL 1898704, at *1. Notably, "[n]either the SSA's rules, policies nor practices require that the medical and psychological consultants or vocational examiners who make medical and vocational determinations at DDS level be vocational specialists with qualifications the same as or similar to those of the vocational experts who advise administrative law judges at higher levels of SSA's disability claim review." Laird v. Stilwill, 969 F. Supp. 1167, 1177 (N.D. Iowa 1997). In fact, the administrative record in the present case never identifies the DDS examiner who

---

[9] DDS, a division of the Department of Health and Human Services, is a North Carolina state agency that makes decisions on applications for disability under the Social Security program. See N.C. Div. of Vocational Rehab. Serv., http://www.ncdhhs.gov/dvrs/pwd/dds.htm (last visited March 4, 2014).

performed Plaintiff's vocational analysis, let alone identifies that examiner's qualifications or methodologies.

The claimant's opportunity for cross-examination also differs significantly between the DDS and hearing levels. Whenever a vocational expert provides testimony or written responses to interrogatories at the hearing level, the claimant "has the right to review and respond to the [vocational expert] evidence prior to the issuance of a decision." SSR 96-9p, 1996 WL 374185, at *10 n.8. No such protections exist at the agency level.

In light of these distinctions, the Court finds that substantial evidence fails to support the ALJ's finding at step five of the sequential analysis. "Given that Plaintiff is not able to perform the full range of jobs within a category, vocational expert testimony is required for the Commissioner to carry [her] burden of proof [at step five]. Further, where [vocational expert] testimony is offered, there must be an opportunity for review and response under the regulations. Without [P]laintiff having had this opportunity, the vocational analysis cannot be treated as a substitute for VE testimony." Spagnola v. Astrue, No. 09–CV–10846–PBS, 2010 WL 4181162, at *5 (D. Mass. Oct. 19, 2010) (unpublished) (internal citations and quotation marks omitted); see also Cohoon v. Astrue, No. CV–10–1219–HZ, 2011 WL 3841568, at *11 (D. Or. Aug. 30, 2011) (unpublished) (holding that, even where a state agency vocational specialist and her qualifications were identified, reliance on her opinion was not appropriate at the hearing level). Accordingly, the Court should reverse the Commissioner's decision and remand the case for a rehearing pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for findings consistent with this Recommendation related to Plaintiff's claim of disability after May 31, 2006. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #13] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 20th day of August, 2014.

/s/ Joi Elizabeth Peake
United States Magistrate Judge